**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CAROLINA JUAREZ HERNANDEZ, INDIVIDUALLY AND ON BEHALF OF ALL SIMILARLY SITUATED PEOPLE,<br>PLAINTIFF,<br>v.<br>UNION SETTLEMENT ASSOCIATION, INC., DARLENE WILLIAMS, IN HER INDIVIDUAL AND PROFESSIONAL CAPACITY,<br>DEFENDANTS. | **AMENDED COMPLAINT**<br>**JURY TRIAL DEMANDED** |

Plaintiff Carolina Juarez Hernandez, represented by Seppinni Law, alleges based on information and belief at all relevant times:

## PRELIMINARY STATEMENT

1. Union Settlement hired Plaintiff Carolina Juarez Hernandez—an East Harlemite—after she successfully participated in the company's East Harlem Community Partnership. But once Ms. Juarez Hernandez was diagnosed with a high-risk pregnancy and severe pregnancy complications, Union Settlement denied her reasonable accommodation requests without explanation. Union Settlement forced her to work without accommodation, putting her life and her pregnancy at risk. And when Ms. Juarez Hernandez was later diagnosed with severe postpartum anxiety and depression Union Settlement and its CEO Darlene Williams (together with Union Settlement, "Defendants") fired her.

2. Union Settlement says it's a grassroots community organization committed to "creating opportunity in East Harlem by offering comprehensive programs that help underserved residents improve their skills and build better lives for themselves and their families."[1]

3. But rather than "help" Ms. Juarez Hernandez "build better lives" for herself and her family, Union Settlement abandoned and mistreated Ms. Juarez Hernandez throughout pregnancy and postpartum, denying her necessary accommodations and leave, and firing her for requesting and needing them.

4. In the termination email and letter Union Settlement sent Ms. Juarez Hernandez, Union Settlement admits to firing her because her requested leave accommodation did not fit with "the program's needs" and had a negative "impact on [Union Settlement's] operations." Union Settlement's letter cites "company policies," under which Ms. Juarez Hernandez was "not eligible for any additional leave," and as a result her "employment with Union Settlement [was] terminated."

5. Union Settlement's "company policies"—which violate local, state, and federal law—are common to all its employees.

6. Ms. Juarez Hernandez now sues Union Settlement for violating her rights.

7. Ms. Juarez Hernandez also seeks class wide injunctive and declaratory relief under Fed. R. Civ. P. 23(b)(2), requiring Union Settlement to fix its policy that illegally prohibits leave as an accommodation.

8. Because Union Settlement's policy interferes with the rights of all its employees, injunctive and declaratory relief is necessary to ensure that class members are not harmed.

---

[1] Mission Statement, https://www.unionsettlement.org/mission-statement/ (last visited Jul. 25, 2025).

## THE PARTIES

9. Plaintiff Carolina Juarez Hernandez is a resident of New York and was employed by Union Settlement from approximately September 7, 2020, until August 12, 2024. At all relevant times she was an "employee" within all applicable statutes.

10. Defendant Union Settlement Association, Inc., is a nonprofit company with its principal place of business at 237 East 104th Street, New York, New York 10029. At all relevant times, Union Settlement was an "employer" within the meaning of all applicable statutes.

11. Defendant Darlene Williams was the President and CEO of Union Settlement Association, Inc. during the relevant period. On information and belief, Dr. Williams is a resident of New York City. Williams exercised active operational control over Union Settlement, possessed the power to hire and fire Plaintiff.

## JURISDICTION

12. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions on the deprivation of Ms. Juarez Hernandez's rights under federal law.

13. The Court has supplemental subject matter jurisdiction over Ms. Juarez Hernandez's related state and local law claims pursuant to 28 U.S.C. § 1367(a).

14. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in the Southern District of New York, where Ms. Juarez Hernandez worked for Union Settlement.

## ADMINISTRATIVE PROCEDURES

15. On March 17, 2025, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). On June 10, 2025, the EEOC issued a Notice of Right to Sue.

16. Under section 8-502 of the NYCHRL, Ms. Juarez Hernandez has served a copy of the Complaint on the New York City Commission on Human Rights and the New York City Law Department, Office of the Corporation Counsel, thereby satisfying the notice requirements of this action.

17. Under section 215(2)(b) of the New York Labor Law, Ms. Juarez Hernandez has served a copy of the Complaint on the New York Attorney General, thereby satisfying the notice requirements of this action.

## FACTUAL ALLEGATIONS

### I. Ms. Juarez Hernandez's Employment at Union Settlement.

18. Ms. Juarez Hernandez started work for Union Settlement on or around September 7, 2020, as an Administrative Assistant.

19. In July 2022, after Union Settlement abruptly terminated its Program Director and Organizer, Ms. Juarez took on duties beyond her job description. These new duties included managing, with two others, a major Union Settlement program.

20. For months, from about July 2022 until October 2022, Union Settlement did not pay Ms. Juarez Hernandez for her new, expanded role, nor did Union Settlement update her job title to reflect her new role and increased responsibilities.

21. At last, in October 2022, Ms. Juarez Hernandez was promoted to Community Organizer, in belated recognition of the work she performed without pay for months.

22. This new position followed a hybrid work schedule; Union Settlement asked Ms. Juarez Hernandez to work remotely two days per week.

### II. Union Settlement repeatedly denies Ms. Juarez Hernandez a reasonable accommodation, exacerbating her pregnancy complications and putting her and her pregnancy at serious risk.

23. In early June 2023, once she had been working as a Community Organizer for about a year and a half, Ms. Juarez Hernandez learned she was pregnant.

24. She began receiving prenatal care from doctors in New York City.

25. On August 1, 2023, Ms. Juarez Hernandez's OBGYN sent Union Settlement a letter notifying the company that she was pregnant, receiving prenatal care, and due on March 14, 2024.

26. By December 2023, Ms. Juarez Hernandez developed serious pregnancy complications. Her OBGYN recommended she reduce stress and limit her physical exertion at work to manage these complications.

27. On December 7, 2023, her doctor sent Union Settlement another letter notifying it that Ms. Juarez Hernandez was diagnosed with a "high risk pregnancy."

28. The Dec. 7 letter included a written request for medical accommodations, with some suggestions.

29. A week later, on December 13, 2023, Ms. Juarez Hernandez followed up with Union Settlement on her doctor's letter.

30. She sent her own letter to Union Settlement, reiterating her doctor's request for accommodations, including that she be allowed to work remotely full-time for the brief remainder of her high-risk pregnancy—rather than on a hybrid schedule—as her long commute caused her severe pain and put her and her pregnancy at increased risk.

31. Ms. Juarez Hernandez explained she would continue appearing in-person for any community engagement events she facilitated. She also clarified that she could successfully complete all other work duties and assignments from home.

32. Union Settlement denied her reasonable accommodation request, telling her that she could not work from home during her pregnancy (even though her contract already included two work-from-home days per week).

33. Ms. Juarez Hernandez appealed the decision.

34. Union Settlement again denied her request, with no explanation, and refused to engage in any dialogue, let alone a cooperative one, with Ms. Hernandez about her requests.

35. On top of this, Union Settlement told Ms. Juarez Hernandez that she must work in-office five days a week and revoked her hybrid schedule. Union Settlement knew that the commute exacerbated Ms. Juarez Hernandez's serious pregnancy complications and was dangerous. Still, Union Settlement not only denied her and her doctors' accommodation requests, but retaliated and interfered too by rescinding privileges and *adding* dangerous and painful commute days in response to their accommodation requests.

36. About a month later, Ms. Juarez Hernandez was admitted to the hospital in connection with her high risk of preterm labor, a risk that had worsened because of her long and increased commute.

37. When she was released, her OBGYN sent another letter to Union Settlement, dated January 16, 2024, urging Union Settlement to "provide the necessary accommodations so that [Ms. Juarez Hernandez] may work remotely from home for the remainder of this pregnancy."

38. The hospital sent another note to Union Settlement stating that Ms. Juarez Hernandez was at high risk for life threatening conditions like preeclampsia[2] and other complications and, as a result, should participate only "in activity that is reasonably comfortable," especially as she neared her due date.

39. Again, Union Settlement ignored Ms. Juarez Hernandez and her doctors and denied their urgent requests for accommodation without explanation.

---

[2] Preeclampsia is a serious pregnancy complication involving high-blood pressure and damage to the kidneys and other organs. If left untreated, it can be fatal for both mother and baby. *See* Preeclampsia, Mayo Clinic, mayo-clinic.org/diseases-conditions/preeclampsia/symptoms-caues/syc-20355745 (last visited Jul. 25, 2025).

## III. Union Settlement's Refusal to Accommodate Ms. Juarez Hernandez Contributes to Severe Postpartum Anxiety and Postpartum Depression.

40. After giving birth to her son in March 2024, Ms. Juarez Hernandez began experiencing severe postpartum anxiety and postpartum depression.

41. These conditions, which resulted in part from and were worsened by Union Settlement's repeated refusals to accommodate Ms. Juarez Hernandez or even to engage in a dialogue about her needs, were diagnosed by doctors across several evaluations.

42. Repeatedly, doctor's notes and diagnostic tests confirmed the unsupportive and hostile work environment at Union Settlement was one of the *primary* stressors contributing to Ms. Juarez Hernandez's postpartum anxiety and postpartum depression.

43. For example, on April 30, 2024, a doctor's report stated that Ms. Juarez Hernandez did not have "the support she was hoping for from her employer." Similarly, a report from June 17, 2024, stated that Ms. Juarez Hernandez was "unsupported by employer during leave."

44. To treat her postpartum anxiety and postpartum depression, doctors prescribed medication, a support group, therapy, and time away from work.

45. In a letter dated July 18, 2024, Ms. Juarez Hernandez's treatment team at Mount Sinai Hospital explained to Union Settlement that while her treatments were progressing, she would need to remain away from work until September 2024, to recover.

46. As evidenced by these notes and others, Union Settlement's refusal to provide reasonable accommodations, or even discuss accommodations, and its unrelenting pressure on Ms. Juarez Hernandez to continue commuting and working in person despite the severe pain and risks involved, all exacerbated and prolonged Ms. Juarez Hernandez's ongoing suffering and post-partum health risks.

## IV. Union Settlement fires Ms. Juarez Hernandez because she needs medical leave as an accommodation.

47. Dr. Darlene Williams, President and CEO of Union Settlement, personally participated in the decision to illegally fire Ms. Juarez Hernandez.

48. Initially, Director of Human Resources Chrstine Munoz presented Dr. Williams with a recommendation regarding Ms. Hernandez, stating that "if the request to extend [leave] is reasonable (2-4 weeks), we can approve it."

49. In response to this recommendation, Dr. Williams said she would discuss with an employee named Tanisha, after which Ms. Munoz should also discuss the matter with Tanisha.

50. On August 7, 2024, Christine Munoz forwarded a new analysis of Ms. Juarez Hernandez's leaves to date and an official recommendation that Union Settlement fire Ms. Juarez Hernandez rather than grant any additional leave.

51. That analysis suggested that Ms. Juarez Hernandez might require an unspecified amount of leave.

52. But this was untrue, as her request (supported by medical documentation) was only for a brief extension until September.

53. The analysis concluded that any continued leave would present an "undue hardship" on the business, but did not explain why.

54. Dr. Williams did not engage in any dialogue with Ms. Munoz around the needs of the business or how the leave would constitute an "undue hardship". Instead, she simply summarily approved the firing.

55. So, on August 12, 2024, Defendants fired Ms. Hernandez.

56. In its termination letter, Union Settlement admits the company fired Ms. Juarez Hernandez because her medical condition required her to go on a brief leave. Union Settlement

wrote to Ms. Juarez Hernandez that her prescribed treatment—treatment she needed to address conditions that Union Settlement knowingly exacerbated—did not fit with "the program's needs" and that her medical leave had a negative "impact on [Union Settlement's] operations."

57. The letter goes on, citing "company policies," under which Ms. Juarez Hernandez was apparently "not eligible for any additional leave," and stated that, "as a result, [. . .] your employment with Union Settlement will be terminated."

58. Union Settlement's per se unlawful "company policies," and its reliance on them in firing Ms. Juarez Hernandez, violate local, state, and federal law.

59. Union Settlement refuses to bring its policies into basic compliance with the law.

60. Beyond all this, Union Settlement refuses to pay Ms. Juarez Hernandez for her remaining earned and unused paid-time-off ("PTO") hours and did not provide her information about or access to her 403(b) and life insurance.

61. Rather than live up to its self-proclaimed commitment to helping people from Harlem "build better lives for themselves and their families" Union Settlement punished Ms. Juarez Hernandez for trying to do just that.

62. When Ms. Juarez Hernandez and her family needed legally protected accommodations so she could recover and heal, Defendants instead jeopardized both her health and her baby's health, and fired her for pursuing medically necessary leave.

## CLASS ALLEGATIONS

63. Ms. Juarez Hernandez repeats and realleges each allegation in the preceding paragraphs as if fully set forth above.

64. Ms. Juarez Hernandez and others similarly situated ("the Class Members") bring class action claims pursuant to Rules 23(b)(2) of the Federal Rules of Civil Procedure under the NYSHRL and NYCHRL.

65. The Class Members are similarly situated to Ms. Juarez Hernandez with respect to their entitlement to injunctive and declaratory relief under the NYSHRL and NYCHRL.

66. Common questions of law and fact apply to all Class Members in New York.

67. The common questions of law and fact arise from and concern the following facts, among others:

a. That all Class Members enjoyed the protection of the NYSHRL and NYCHRL;

b. That the Class Members were Union Settlement employees;

c. Union Settlement had a common policy that applies to all Class Members;

d. Injunctive class wide or declaratory relief will protect the interest of the class in a common way;

e. On information and belief, the issues raised by affirmative defenses that may be asserted by Union Settlement are common.

68. Ms. Juarez Hernandez's class claims are typical of the claims of the Class Members in that each Class Member is subject to the same unlawful policy for which Ms. Juarez Hernandez now seeks injunctive and declaratory relief under Rule 23(b)(2).

69. Ms. Juarez Hernandez will fairly and adequately protect and represent the interests of the Class Members.

70. Ms. Juarez Hernandez and her counsel have the time, ability, and resources to prosecute this action.

71. Ms. Juarez Hernandez has retained the counsel below who have experience litigating class action claims, employee rights claims, and other claims in federal court.

72. The class is so numerous as to render joinder of all members impracticable in that there are hundreds of members of the class. Ms. Juarez Hernandez is one of hundreds of current and former employees of Union Settlement whose statutory rights to reasonable accommodations under the NYSHRL and NYCHRL have been interfered with and violated.

73. The questions of law and fact common to the class predominate over any questions affecting only individual members.

74. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## FIRST AND SECOND CAUSES OF ACTION

**Discrimination and Failure to Accommodate in Violation of the Americans with Disabilities Act ("ADA")**
**(Union Settlement)**

75. Ms. Juarez Hernandez repeats and realleges each allegation in the preceding paragraphs as if fully set forth above.

76. At all relevant times, Ms. Juarez Hernandez was an "employee" within the meaning of the ADA, 42 U.S.C. § 12101, and Union Settlement was a "covered entity."

77. By the actions described above, Union Settlement violated the ADA by unlawfully interfering with Ms. Juarez Hernandez's rights and discriminating against her by repeatedly refusing to grant her requests for the reasonable accommodations needed for her well-documented medical conditions.

78. As a direct and proximate result of Union Settlement's unlawful conduct in violation of the ADA, Ms. Juarez Hernandez suffered and continues suffering harm for which she is entitled to an award of damages, to the greatest extent permitted under law, along with attorneys' fees and expenses.

79. Union Settlement's unlawful discrimination and failure to accommodate constitute bad faith, malicious, willful, and wanton violations of the ADA for which Ms. Juarez Hernandez is entitled to an award of liquidated damages.

## THIRD CAUSE OF ACTION

### Retaliation in Violation of the ADA (Union Settlement)

80. Plaintiff repeats and realleges each allegation in the preceding paragraphs as if fully set forth above.

81. At all relevant times, Ms. Juarez Hernandez was an "employee" within the meaning of the ADA, 42 U.S.C. § 12101, and Union Settlement was a "covered entity."

82. By the actions described above, Union Settlement violated the ADA by unlawfully terminating Ms. Juarez Hernandez in retaliation for taking medical leave and requesting accommodations.

83. As a direct and proximate result of Union Settlement's unlawful conduct in violation of the ADA, Ms. Juarez Hernandez suffered and continues suffering harm for which she is entitled to an award of damages, to the greatest extent permitted under law, along with attorneys' fees and expenses.

84. Union Settlement's unlawful retaliation constitutes bad faith, malicious, willful, and wanton violations of the ADA for which Ms. Juarez Hernandez is entitled to an award of punitive damages.

## FOURTH CAUSE OF ACTION

**Interference in Violation of the Family and Medical Leave Act ("FMLA")**
**(All Defendants)**

76. Ms. Juarez Hernandez repeats and realleges each allegation in the preceding paragraphs as if fully set forth above.

77. At all relevant times, Ms. Juarez Hernandez was an "eligible employee" within the meaning of the FMLA, 29 U.S.C. § 2601, and Union Settlement and Darlene Williams were "employers."

78. By the actions described above, Defendants violated the FMLA by unlawfully interfering with, restraining, or denying the exercise of Ms. Juarez Hernandez's rights by citing an illegal company policy as grounds for refusing her request for medical leave, including unpaid leave, despite her well-documented medical condition and requests for leave.

79. As a direct and proximate result of Defendants' unlawful conduct in violation of the FMLA, Ms. Juarez Hernandez suffered and continues suffering harm for which she is entitled to an award of damages, to the greatest extent permitted under law, along with attorneys' fees and expenses.

80. Defendants' unlawful interference constitutes bad faith, malicious, willful, and wanton violations of the FMLA for which Ms. Juarez Hernandez is entitled to an award of liquidated damages.

## FIFTH CAUSE OF ACTION

**Retaliation in Violation of the FMLA**
**(All Defendants)**

81. Ms. Juarez Hernandez repeats and realleges each allegation in the preceding paragraphs as if fully set forth above.

82. At all relevant times, Ms. Juarez Hernandez was an "eligible employee" within the meaning of the FMLA, 29 U.S.C. § 2601, and Union Settlement and Darlene Williams were "employers."

83. By the actions described above, Defendants violated the FMLA by unlawfully retaliating against Ms. Juarez Hernandez for exercising rights protected by the FMLA, including by terminating her in retaliation for exercising her FMLA right to request or take protected leave and subjecting her to an adverse employment action that would dissuade a reasonable person from exercising rights protected by the FMLA.

84. As a direct and proximate result of Defendants' unlawful conduct in violation of the FMLA, Ms. Juarez Hernandez suffered and continues suffering harm for which she is entitled to an award of damages, to the greatest extent permitted under law, along with attorneys' fees and expenses.

85. Defendants' unlawful retaliation constitutes bad faith, malicious, willful, and wanton violations of the FMLA for which Ms. Juarez Hernandez is entitled to an award of liquidated damages.

## SIXTH CAUSE OF ACTION

**Protected Leave Retaliation under New York Labor Law ("NYLL") § 215**
**(All Defendants)**

86. Ms. Juarez Hernandez repeats and realleges each allegation in the preceding paragraphs as if fully set forth above.

87. At all relevant times, Ms. Juarez Hernandez was an "employee" within the meaning of city, state, and federal protected leave laws, and Union Settlement and Darlene Williams were "employers."

88. By the actions described above, Union Settlement violated city, state, and federal protected leave laws by denying Ms. Juarez Hernandez her protected leave and terminating her for requesting protected leave.

89. As a direct and proximate result of Defendants' unlawful conduct in violation of city, state, and federal protected leave laws, Ms. Juarez Hernandez suffered and continues suffering harm for which she is entitled to an award of damages, to the greatest extent permitted under law, along with attorneys' fees and expenses.

90. Defendants' unlawful retaliation constitutes bad faith, malicious, willful, and wanton violations for which Ms. Juarez Hernandez is entitled to an award of liquidated damages.

## SEVENTH CAUSE OF ACTION

**Failure to Pay Wages and Wage Supplements under NYLL §§ 191, 198**
**(All Defendants)**

91. Ms. Juarez Hernandez repeats and realleges each allegation in the preceding paragraphs as if fully set forth above.

92. At all relevant times, Ms. Juarez Hernandez was an "employee" within the meaning of the New York Labor Law, and Union Settlement and Darlene Williams were "employers."

93. By the actions described above, Defendants violated the New York Labor Law by failing to pay Ms. Juarez Hernandez her agreed upon earned benefits and wage supplements, including vacation pay.

94. As a direct and proximate result of Defendants' unlawful conduct in violation of the New York Labor Law, Ms. Juarez Hernandez suffered and continues suffering harm for which she is entitled to an award of damages, to the greatest extent permitted under law, along with attorneys' fees and expenses.

95. Defendants' unlawful retaliation constitutes bad faith, malicious, willful, and wanton violations for which Ms. Juarez Hernandez is entitled to an award of liquidated and statutory damages.

## EIGHTH AND NINTH CAUSES OF ACTION

**Discrimination and Retaliation in Violation of the New York City Human Rights Law (NYCHRL)**
**(All Defendants)**

96. Ms. Juarez Hernandez repeats and realleges each allegation in the preceding paragraphs as if fully set forth above.

97. At all relevant times, Ms. Juarez Hernandez was an "employee" and Defendants were "employers" within the meaning of the NYCHRL.

98. By the actions described above, Union Settlement discriminated and retaliated against Ms. Juarez Hernandez based on her protected activities and characteristics in violation of the NYCHRL, including, most recently, by terminating her for requesting protected leave and failing to accommodate her pregnancy and disabilities.

99. Dr. Williams aided and abetted the aforesaid discrimination and retaliation.

100. As a direct and proximate result of Defendants' unlawful conduct in violation of the NYCHRL, Ms. Juarez Hernandez suffered and continues suffering monetary or economic harm for which she is entitled to an award of damages, to the greatest extent permitted under law, along with reasonable attorneys' fees and expenses.

101. As a direct and proximate result of Defendants' unlawful conduct in violation of the NYCHRL, Ms. Juarez Hernandez has suffered, and continues to suffer, mental anguish and severe emotional distress, for which she is entitled to an award of damages.

102. Defendants' unlawful actions were done with willful negligence, or recklessness, or a conscious disregard of Ms. Juarez Hernandez's rights or constituted conduct so reckless as to amount to such disregard of her protected rights under the NYCHRL, for which she is entitled to an award of punitive damages

## TENTH AND ELEVENTH CAUSES OF ACTION

**Discrimination and Retaliation in Violation of the New York State Human Rights Lawn (NYSHRL)**
**(All Defendants)**

103. Ms. Juarez Hernandez repeats and realleges each allegation in the preceding paragraphs as if fully set forth above.

104. At all relevant times, Ms. Juarez Hernandez was an "employee" within the meaning of the NYSHRL and Defendants were "employers."

105. By the actions described above, Union Settlement discriminated and retaliated against Ms. Juarez Hernandez based on her protected characteristics and activities in violation of the NYSHRL, including, most recently, by terminating her for requesting protected leave and failing to accommodate her pregnancy and disabilities.

106. Dr. Williams aided and abetted such discrimination and retaliation.

107. As a direct and proximate result of Defendants' unlawful conduct in violation of the NYSHRL, Ms. Juarez Hernandez suffered and continues suffering monetary or economic harm for which she is entitled to an award of damages, to the greatest extent permitted under law, along with reasonable attorneys' fees and expenses.

108. As a direct and proximate result of Defendants' unlawful conduct in violation of the NYSHRL, Ms. Juarez Hernandez has suffered, and continues to suffer, mental anguish and severe emotional distress, for which she is entitled to an award of damages.

109. Defendants' unlawful actions were done with willful negligence, or recklessness, or a conscious disregard of Ms. Juarez Hernandez's rights or constituted conduct so reckless as to amount to such disregard of her protected rights under the NYSHRL, for which she is entitled to an award of punitive damages.

## TWELFTH CAUSE OF ACTION

**Violations of the Pregnant Workers Fairness Act of 2022 ("PWFA")**
**(Union Settlement)**

110. Ms. Juarez Hernandez repeats and realleges each allegation in the preceding paragraphs as if fully set forth above.

111. At all relevant times, Ms. Juarez Hernandez was an "employee" within the meaning of the PWFA, 42 U.S.C. 2000gg, and Union Settlement was an employer.

112. By the actions described above, Union Settlement violated the PWFA by denying Ms. Juarez Hernandez's requests for reasonable accommodations throughout her pregnancy, as well as unlawfully citing an illegal company policy to deny Plaintiff's ability to take protected leave to receive treatment for medical conditions after the birth of her child, failing to accommodate her pregnancy, and for terminating her for requesting such leave.

113. As a direct and proximate result of Union Settlement's unlawful conduct in violation of the PWFA, Ms. Juarez Hernandez suffered and continues suffering harm for which she is entitled to an award of damages, to the greatest extent permitted under law, along with attorneys' fees and expenses.

114. Union Settlement's unlawful conduct constitutes bad faith, malicious, willful, and wanton violations of the PWFA for which Plaintiff is entitled to an award of punitive damages.

## THIRTEENTH CAUSE OF ACTION

**Class Wide Declaratory Judgment Act Claim for Prospective Relief from Defendant's Policies Violating NYSHRL and NYCHRL**

115. Ms. Juarez Hernandez repeats and realleges each allegation in the preceding paragraphs as if fully set forth above.

116. Pursuant to Rule 23(b)(2) and the Declaratory Judgment Act, Ms. Juarez Hernandez seeks injunctive and declaratory relief and a finding that Union Settlement's common company policy violates the NYSHRL and NYCHRL.

117. Union Settlement's unlawful policy prohibits people with disabilities or pregnancy related needs, entitled to medical leave as an accommodation under the NYCHRL and NYSHRL, from receiving such an accommodation.

118. This common policy interferes with and impacts the rights of all Union Settlement employees.

119. Injunctive and declaratory relief is necessary to ensure that class members are not harmed again.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Carolina Juarez Hernandez demands judgment against Defendant Union Settlement in an amount to be determined at trial for the following relief:

A. certifying the Rule 23(b)(2) class as a Class Action under Fed. R. Civ. P. 23;

B. designating Plaintiff as Class Representative and designating Plaintiff's counsel as class counsel;

C. a declaratory judgment that the actions, conduct, and practices of Defendant violated federal, state, and city laws;

D. an award of economic damages;

E. an award of compensatory damages;

F. an award of monetary damages for mental anguish and emotional distress;

G. an award of punitive damages;

H. an award of such interest as is allowed by law, and damages for any adverse tax consequences stemming from an award;

I. an award of reasonable attorneys' fees, costs, and expenses of this action;

J. permanent equitable and injunctive relief; and

K. such other and further relief deemed just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Date: March 31, 2026
New York, NY

**SEPPINNI LAW, PLLC**

*/s/ Shane Seppinni*
Shane Seppinni
Megan Jones
40 Broad St., 7th Fl.
New York, NY 10004
(212) 859-5085
shane@seppinnilaw.com
megan@seppinnilaw.com